**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

RITHEEN HATTON,

          **Plaintiff,**          **Case No. C2: 02-CV-1201**

**v.**                        **JUDGE GREGORY L. FROST**
                                  **Magistrate Judge Terence P. Kemp**

STACY COFFEY,

          **Defendant.**

## OPINION AND ORDER

In this diversity action, 28 U.S.C. §1332, Plaintiff alleges wrongful death, survivorship, racially motivated killing and violations of the United States Constitution.  This matter is before the Court on Defendant's motion for summary judgment (Doc. # 79), and her motion to strike certain affidavits attached to Plaintiff's memorandum in opposition to Defendant's motion for summary judgment (Doc. # 87).  Also before the Court, is Plaintiff's request for oral argument made in her memorandum in opposition to Defendant's motion.  For the reasons that follow, the Court **GRANTS IN PART and DENIES IN PART** Defendant's motion for summary judgment, **DENIES as MOOT** Defendant's motion to strike and **DENIES** Plaintiff's request for oral argument.

## I.  BACKGROUND

**A.  Facts**

On July 11, 2001, Darius M. Ford, Sr. was murdered in Muskingum County, Ohio, near a well known public hunting area.  Welker Dep.[1] at 36, 55-56, 60.  Ford was shot several times

---

[1]The deposition transcript of Detective Steven K. Welker of the Muskingum County Sheriff's Department, the lead investigator in the Ford murder, is filed at docket number 78.

with a .25 caliber handgun and paralyzed from the waist down.  *Id.* at 53-55.  Ford then crawled approximately forty yards to his car and died.  *Id.*

Before his murder, Ford taught marshal arts, Tae Bo and exercise classes in Zanesville and Coshocton, Ohio.  Ford was known to date several women at the same time.  *Id.* at 15.  At the time of his murder, Ford was married and he was also dating Alana Brown.  *Id.* Sometime before his murder, Ford was involved in a romantic relationship with Defendant.  *Id.* at 68.  On the day of the murder, Defendant called Ford's pager and Ford placed a telephone call to Defendant, speaking with her for several minutes.  Amburgey Dep.[2] at 67.

It is at this point that the parties' interpretation of the events that took place differ extensively.

Plaintiff, Ford's sister and the administrator his estate, argues that the facts clearly show that Defendant killed Ford.  Complaint ¶¶ 1, 12.  Specifically, Plaintiff argues that the telephone call between Ford and Defendant on the day of the murder indicates that Defendant lured Ford to a deserted location to kill him.  *Id.*  Further, the lead investigator of the murder testifies that Defendant is the prime suspect in the murder.  Welker Dep. at 46-47, 62-63, 68.  Also, when Defendant was questioned by the authorities about the murder, she had various scrapes and cuts on her body.  *Id.*  Moreover, Defendant could not account for her whereabouts for the entire day of the murder.  Plaintiff Dep.[3] at 31.  Finally, Brown testified that she spoke to Defendant the day after the murder and Defendant indicated that she was not aware that Ford was missing.  Brown

[2]The deposition of John Amburgey, a private detective who investigated the Ford murder is attached as Exhibit C to Defendant's motion for summary judgment.

[3]Plaintiff's deposition is attached as Exhibit B to Defendant's Motion for summary judgment.

Affidavit[4] ¶ 7.  However, Defendant's husband testified that Defendant informed him the day of the murder that Ford was missing.  Coffey Dep.[5] at 54-55, 69, 81.

Defendant's rendition of the events paints a different picture.  That is, Defendant explains that she telephoned Ford on the day of his murder to ascertain the time his exercise classes were being taught that day–not to ambush him.  Amburgey Dep. at 67.  Further, Defendant explains that she received the cuts and scrapes while putting up metal shelving at her place of employment–not in an altercation with Ford.  *Id.* at 81.  Also, at the scene of Ford's murder, the authorities found blood, DNA and fingerprints–none of which belong to Defendant.  Welker Dep. at 27, 33.  Moreover, the Muskingum County Sheriff's Department executed a search warrant upon Defendant's residence and found nothing of evidentiary value.  *Id.* at 61.  Finally, the authorities have not charged anyone with the murder of Ford.

**B.  Procedural History**

Plaintiff brought this action on December 4, 2002, alleging that Defendant "unlawfully and/or negligently and/or recklessly and/or willfully and/or wantonly and /or intentionally shot and killed" Ford.  (Doc. # 1 ¶ ¶ 19, 21,22.)  Thereafter, Defendant declared bankruptcy and an appropriate stay was entered.  (Doc. # 22.)  The Court lifted the stay under the directive of the Bankruptcy Court.  (Doc. # 24 at 1.)  Trial is set for February 4, 2008 at 9:00 a.m.  (Doc. # 62.)

On July 31, 2007, Defendant filed a motion for summary judgment on all Plaintiff's claims.  (Doc. # 79.)  Plaintiff filed a memorandum in opposition to Defendant's motion,

---

[4]Alana Brown's affidavit is attached as Exhibit 1 to Plaintiff's memorandum in opposition to Defendant's motion for summary judgment.

[5]The deposition of James Toby Coffey is attached as Exhibit 4 to Plaintiff's memorandum in opposition to Defendant's motion for summary judgment.

wherein Plaintiff requests oral argument (Doc. # 87), and Defendant has replied in support of her motion (Doc. # 94).

On September 10, 200, Defendant filed a motion to strike an affidavit and portions of two affidavits all attached to Plaintiff's memorandum in opposition to Defendant's motion for summary judgment.  (Doc. # 93.)  Plaintiff filed a memorandum in opposition to that motion on September 27, 2007.  (Doc. # 96.)

## II.  DISCUSSION

The Court will address each of Defendant's motions and Plaintiff's request for oral argument *seriatim*.

### A.  Defendant's Motion for Summary Judgment

Defendant requests summary judgment on all Plaintiff's claims.

### 1.  Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case.  *See Muncie Power Products, Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing that there is a genuine issue of

4

material fact for trial.  *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).  Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' "  *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

### 2.  Analysis

Plaintiff brings causes of action for wrongful death and survivorship under Ohio law asserting that Defendant used excessive and unjustified force against Ford causing him pain, suffering, and ultimately death.  Further, Plaintiff alleges that Defendant killed Ford because he is an African-American, thereby violating his constitutional and statutory civil rights.  (Doc. # 1 ¶¶ 32, 33, 34 (citing 42 U.S.C. §§ 1981, 1982, 1985, 1986, 1988, 18 U.S.C. § 241 and U.S. Const. amend. IV, V, VI, VIII, IX, X, XIII, XIV).)

### a.  Wrongful Death and Survivorship

Plaintiff alleges that Defendant used excessive and unjustified force against Ford causing him to suffer bodily injuries, pain, suffering, and ultimately death.  The Ohio wrongful death statute provides:

> In addition to the causes of action which survive at common law, causes of action for mesne profits, or injuries to the person or property, or for deceit or fraud, also shall survive; and such actions may be brought notwithstanding the death of the person entitled or liable thereto.

Ohio Rev. Code  § 2125.01.

Additionally, the Ohio survivorship statute provides a claim that is separate and apart from a wrongful death claim. *Shinaver v. Szymanski*, 14 Ohio St. 3d 51, 14 Ohio B. 446, 471 N.E.2d 477, 482 (Ohio 1984) (citing Ohio Rev. Code § 2305.21). In *Shinaver*, the Ohio Supreme Court explained: "Under the general survival statute, R.C. § 2305.21, a victim's right of action for personal injuries survives and passes to her personal representative, and may be instituted for the benefit of the estate, notwithstanding that death resulted from injuries for which an action could also be maintained under the Wrongful Death Act, R.C. § 2125.01 *et seq.*" *Id.*

Defendant moves for summary judgment on these two claims, arguing that there is no evidence upon which a reasonable jury could conclude that Defendant killed Ford. (Doc. # 79 at 10.) This Court, however, disagrees.

When viewing the evidence in the light most favorable to Plaintiff and giving her the benefit of all inferences, *Matsushita Elec. Indus. Co., Ltd*, 475 U.S. at 587, the evidence before this Court is not so one-sided that Defendant must prevail as a matter of law. *Anderson*, 477 U.S. at 251-52. To the contrary, the evidence "presents a sufficient disagreement to require submission to a jury." *Id.* Further, credibility determinations are exclusively within the province of the jury, which, this Court cannot invade. *United States v. Schultz*, 855 F.2d 1217, 1221 (6th Cir. 1988). Accordingly, Defendant's motion for summary judgment on these two claims must fail.

### b. Racially Motivated Killing

Plaintiff alleges that Defendant killed Ford because he was an African American. (Doc. # 1 ¶ 28(b)). In her motion for summary judgment, Defendant argues that Plaintiff has set forth no evidence that the alleged wrongful killing of Ford was racially motivated. Moreover, Plaintiff

herself has admitted on deposition that she has no basis on which to believe that her brother's killing was racially motivated. (Doc. # 79 at 5.) Indeed, it is not disputed that Defendant had been in a romantic relationship with Ford and that after the romantic relationship ended, the two stayed friends.

Plaintiff's claim of racially motivated killing must be dismissed. There is no evidence before this Court that could lead this Court to conclude that Ford's murder was racially motivated regardless of who the perpetrator may have been.

### c. Constitutional Rights

Plaintiff alleges that Defendant violated her rights, and Ford's rights, secured by the United States Constitution. (Doc. # 1 ¶¶ 32, 33, 34.) Individuals, however, have no constitutional right to be free from harm inflicted by private actors. *DeShaney v. Winnebago Cy. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989) (the Constitution does not require "the State to protect the life, liberty, and property of its citizens against invasion by private actors"); *Gazette v. City of Pontiac*, 41 F.3d 1061, 1065 (6th Cir. 1994) (same). Thus, Plaintiff's claim that Defendant violated hers and/or Ford's constitutional rights cannot survive summary judgment.

## B. Defendant's Motion to Strike

In Defendant's motion to strike, she argues that certain affidavits are inadmissible and should be stricken in whole or in part. (Doc. #93.) This Court, however, found it unnecessary to rely the affidavits in question in its consideration of Defendant's motion for summary judgment. Consequently, Defendant's motion to strike is rendered moot.

## C. Plaintiff's Request for Oral Argument

In Plaintiff's memorandum in opposition to Defendant's motion for summary judgment,

Plaintiff requests oral argument to be held before this Court.  (Doc. # 87.)  Pursuant to the Local Rules for the Southern District of Ohio, parties may apply to the Court for oral argument if "oral argument is deemed to be essential to the fair resolution of the case because of its public importance or the complexity of the factual or legal issues presented."  S.D. Ohio Civ. R. 7.1(b)(2).  Whether to grant or deny oral argument is left to the sound discretion of the trial court.  *See Whitescarver v. Sabin Robbins Paper Co.*, Case No. C-1-03-911, 2006 U.S. Dist. LEXIS 51524, *5-6 (S.D. Ohio July 27, 2006).

This Court concludes that oral argument is not necessary to the fair resolution of Defendant's motion for summary judgment.

## III.  CONCLUSION

For the forgoing reasons, the Court **GRANTS IN PART and DENIES IN PART** Defendant's motion for summary judgment.  (Doc. # 79.)  Specifically, the Court **GRANTS** Defendant's motion for summary judgment on Plaintiff's constitutional claims and on Plaintiff's claims of racially motivated killing and **DENIES** Defendant's motion for summary judgment on Plaintiff's wrongful death and survivorship claims, **DENIES as MOOT** Defendant's motion to strike (Doc. # 93), and **DENIES** Plaintiff's request for oral argument.

**IT IS SO ORDERED.**

/s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE